NO.    94-309

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

CITY OF BILLINGS,

    Petitioner and Appellant,

-v-

STATE OF MONTANA,
DEPARTMENT OF REVENUE,

    Respondent and Respondent.

FILED

MAR 2 1 1995

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Thirteenth Judicial District,
    In and for the County of Yellowstone,
    The Honorable Russell K. Fillner, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Bonnie J. Sutherland,  Assistant City Attorney,
        Billings, Montana

    For Respondent:

        Lawrence G. Allen, Special Assistant Attorney
        General, Department of Revenue, Helena, Montana

Submitted on briefs:  December 15, 1994

Decided:  March 21, 1995

Filed:

_____
Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

This is an appeal by the City of Billings from an Order of the District Court of the Thirteenth Judicial District, Yellowstone County. The District Court's Order held that the City of Billings is not exempt from payment of fees for the funding of the Department of Public Service Regulation and the Montana Consumer Counsel during years when its municipal water utility rates are not increased more than twelve percent. We affirm.

The sole issue for review is whether the District Court erred in holding that the City of Billings, as owner and operator of a municipal utility, must always pay a Public Service Commission fee and a Montana Consumer Counsel fee.

The City of Billings owns and operates a municipal water and sewer utility serving customers in and near Billings. On August 7, 1992, the Montana Department of Revenue (DOR) assessed the City of Billings for Public Service Commission (PSC) and Montana Consumer Counsel (MCC) fees of $14,890.98 and $14,886.16, respectively, for the City's 1991 and 1992 fiscal years.

After the assessment, the City questioned whether it was subject to the PSC and MCC fees. The City took the position that it could not be required to pay these fees when it had never raised its rates in excess of twelve percent in any one year following deregulation of its utility activities in 1982. In response to the City's query, both the PSC and DOR took the position that the City must pay the fees annually. The City appealed the assessment, claiming it did not owe the fees because it had not raised its

rates more than twelve percent in either of the two fiscal years concerned and, thus, had no revenues from regulated activities.

Because DOR had issued an opinion stating its position on the matter prior to assessing the fees, the parties waived informal agency appeal proceedings with DOR and brought the matter directly to the State Tax Appeal Board. The City filed a Notice of Appeal with the State Tax Appeal Board on February 24, 1993. On April 22, 1993, following DOR's answer to the Notice of Appeal indicating that the parties could resolve the only remaining factual issue, the City petitioned the District Court for interlocutory adjudication pursuant to §§ 15-Z-304 and -305, MCA.

After briefing by the parties and without an oral hearing, the District Court ruled in favor of DOR and it is from this ruling that the City of Billings now appeals.

Did the District Court err in holding that the City of Billings, as owner and operator of a water and sewer utility, must always pay PSC and MCC fees?

The operations of the PSC and MCC are not funded through the general fund like most state government agencies. The method of funding them is provided for as follows:

> 69-1-223. Funding of office of consumer counsel. . . . (2) In addition to all other licenses, fees, and taxes imposed by law, all regulated companies shall:
>
> (a) within 30 days after the close of each calendar quarter, file with the department of public service regulation and the department of revenue a statement, in a form that the commission and department may determine, showing the gross operating revenue from all activities regulated by the commission within the state for that calendar quarter of operation or portion of a quarter, separately stating gross revenue from sales to other

3

regulated companies for resale; and

(b) at that time pay to the department of revenue a fee based on a percentage of the gross operating revenue reported, as determined by the department of revenue under 69-1-224. . .

69-1-402. **Funding of the department of public service regulation. .** (2) In addition to all other licenses, fees, and taxes imposed by law, all regulated companies shall, within 30 days after the close of each calendar quarter, pay to the department of revenue a fee based on a percentage of gross operating revenue reported pursuant to 69-1-223(2)(a), as determined by the department of revenue under 69-1-403.

DOR assessed the PSC and MCC fees to the City of Billings Public Utility Department for the sale of water for fiscal years 1991 and 1992 according to the formula set forth in § 69-1-224, MCA.

DOR assesses the PSC and MCC fees to "regulated companies" in Montana based on a percentage of gross operating revenues generated within the state by the regulated company. Sections 69-1-201(3), and -401(2), MCA, both set forth the following definition of "regulated companies":

"Regulated companies" means all those organizations, corporations, associations, or other public or private entities which now are or may hereafter become subject to regulation in any manner by the department of public service regulation or the public service commission or any successor agency.

In 1981, the Montana Legislature enacted House Bill 765, transferring regulation of municipal utilities from the PSC to the municipality, except as expressly retained in § 69-7-102, MCA. The following statutes govern the PSC's regulation of rates by the municipality:

69-7-101. **Municipal utilities -- regulation by municipality -- limitation.** A municipality has the power and authority to regulate, establish, and change, as it

4

considers proper, rates, charges, and classifications imposed for utility services to its inhabitants and other persons served by municipal utility systems. Rates, charges, and classifications shall be reasonable and just and, except as provided in 69-7-102, they may not be raised to yield more than a 12% increase in total annual revenues or, in the case of mandated federal and state capital improvements, the increase may not exceed amounts necessary to meet the requirements of bond indentures or loan agreements required to finance the local government's share of the mandated improvements. Annual revenues must be computed on any consecutive 12-month period for purposes of this chapter.

69-7-102. Rate increases over maximum. (1) If a municipal utility requires rate increases that yield an increase in total revenues in excess of 12% in any one year or rate increases for mandated federal and state capital improvements for which the increase exceeds amounts necessary to meet the requirements of bond indentures or loan agreements required to finance the local government's share of the mandated improvements, it must make application for such increases to the public service commission.

These statutes exclude municipal utilities from PSC jurisdiction over rate increases if the utility does not increase its rates by more than twelve percent for any twelve-month period.

Section 69-1-223, MCA, providing for funding of the MCC, states that the MCC fee is calculated with reference to "the gross operating revenue from all activities regulated by the commission." The PSC fee is determined in the same manner as the MCC fee, except that gross revenues from sales to other regulated companies for resale, as calculated by the PSC, must be excluded from the determination of the total gross operating revenue.

Section 69-1-224, MCA, sets forth the method for calculating the MCC fee. It contains a limitation stating that no regulated company owned and operated by any municipal corporation can be required to pay more than .06 of one percent of its gross operating

5

revenue. Section 69-1-403, MCA, provides that the PSC fee shall be calculated in the manner described in § 69-1-224, MCA, for the MCC fee. The statutory formula for determining both PSC and MCC fees is based on a utility's gross operating revenue from "activities regulated by the commission."

The City contends that it had no such activities and therefore owed no MCC or PSC fees. However, none of the statutes which are applicable to the funding of the PSC and MCC in Chapter 1, Parts 2 and 4, or in Chapter 7, Part 1, entitled Regulation of Rates by Municipality, include any specific exemption for municipal utilities for the payment of the PSC and MCC fees. Although the City asserts that §§ 69-7-101, MCA, through 69-7-201, MCA, give municipalities all regulatory power and authority over municipal utilities, it acknowledges that a municipality must obtain PSC approval if it wishes to increase rates, charges, or classifications to yield more than a twelve percent increase in any one year.

The City argues, however, that because it did not raise its rates, charges, or classifications in fiscal years 1991 and 1992 to yield more than twelve percent in total annual revenues, the PSC had no regulatory power over the City and the City is not subject to either of the fees under Chapter 1, Parts 2 and 4. The City argues that the fees are "user fees" to be assessed for involvement of the PSC and MCC in utility rate proceedings of which it will never be a participant unless it raises its rates more than twelve percent in one year.

6

DOR contends that the fees are not "user fees" and that they are in fact taxes. It further contends that the sale of water is an activity regulated in Montana, the City generated revenue from the sale of water and, therefore, the City must be taxed for that activity. It contends that the City is subject to the fees because the Billings Public Utility Department meets the statutory definition of "regulated company" as set forth in §§ 69-1-201(3) and -401(2), MCA. Not only is the City's water and sewer utility a "regulated company," but as such, it was statutorily required to file an annual statement with the PSC for regulation purposes. Therefore, according to DOR, the City's utility is subject to the fees.[1]

Clearly, the City's municipal utility is included within the statutory definition of "regulated companies." Both the PSC and the MCC fee statutes use the term "regulated company," both statutes include definition of "regulated companies" and both definitions of "regulated companies" include the language "public entities . . subject to regulation in any manner." The City's rate increases are subject to regulation if they are in excess of twelve percent in any one year and it must submit annual statements to the PSC detailing its gross operating revenues. Although PSC regulation of municipal utilities is limited by Part 7, clearly the definition of "regulated companies" includes the City of Billings'

---

[1]The City of Billings did file the statutorily required statements showing its gross revenues from regulated activities. However, it stated on the forms that it had no revenue from regulated activities for fiscal years 1991 and 1992.

water and sewer utility. Therefore, the plain language of these statutes includes the City's municipal utility as an entity subject to regulation by the PSC.

Nonetheless, the City maintains that both the MCC fee and the PSC fee are "user fees." It claims that its revenue is not derived from a "regulated activity" as that term is used in § 69-1-223, MCA, because it can raise its rates up to twelve percent a year without PSC approval. Section 69-1-223, MCA, sets forth the procedure for collecting the fees to fund the MCC; it does not address the question of what entities are subject to the taxes. Parts 2 and 4 of Title 69, Chapter 1, which specifically apply to the funding of the MCC and PSC and determine how the fees for such are to be calculated and assessed by the DOR, both include definitions of "regulated companies" which we have stated above apply to the City of Billings Public Water Department. There would be no reason to include entities such as the City's municipal utility in the definitions if such entities were not to be assessed the fees which Parts 2 and 4 authorize.

The City also relies on Lechner v. City of Billings (1990), 244 Mont. 195, 797 P.2d 191, for its position that it does not owe the PSC or MCC fees. The issue in Lechner was whether the City of Billings could adopt by resolution a new system for funding the expansion of water and sewer facilities. The City assessed a "systems development fee" on customers who requested new or upgraded water or wastewater service. In Lechner, 797 P.2d at 195, we noted that municipal utilities were excluded from the definition

8

of "public utility" in § 69-3-101, MCA. However, the exclusion from the definition of "public utility" does not determine that it is not a "regulated company." The Court did not conclude that the PSC had no regulatory power over the City's water utility. The Lechner case does not support a conclusion that the sale of water at a rate set by a municipal utility is revenue from unregulated activities.

According to the City, regulated companies do not have to pay the fees unless they "use" the services of the PSC and the MCC during a given year for rate making. Under this rationale, a municipal utility could control and avoid the imposition of the PSC and MCC fees, except under extraordinary circumstances. The municipal utility could decide never to "use" the services of the PSC and this could place the burden of funding the MCC and PSC totally on other regulated companies. There is no indication that this is what the legislature intended.

Moreover, the "user fee" rationale would not seem to apply to the MCC according to the statutes governing that entity. The City's argument that the MCC and PSC fees are "user fees" is weakened by the express provision contained in § 69-7-111(5), MCA, which mandates that notice of all public hearings for regulating, establishing or changing rates, charges, or classifications imposed on customers be mailed to the MCC. Section 69-7-112, MCA, expressly provides that all affected or interested persons and entities, including the MCC, may be present and represented by counsel, and, if the MCC chooses to be present and represented by

9

counsel, the MCC shall be allowed to make arguments as it **may** consider proper at the conclusion of the municipal rate hearing.

When the legislature relaxed the PSC's regulation of municipal utility rate proceedings in 1981, it did not change the role of the MCC in municipal rate cases. Municipal utilities must still notify the MCC of all rate hearings and the MCC is specifically authorized to represent the consumer's interest at rate hearings conducted by municipalities. Although the MCC has discretion concerning its involvement in municipal rate hearings, clearly the appearance of the MCC at municipal rate hearings is not discretionary on the part of the municipal utility. Although the City can control the jurisdiction of the PSC in its decisionmaking concerning rate increases **to its customers, it** has no power to control the participation of the MCC in the rate hearing process.

The DOR contends, and we agree, that the City of Billings' interpretation of the statutes is contrary to legislative intent underlying the fee statutes. The legislature was aware that municipal utilities were subject to the MCC fees when it enacted the provisions of Title 69, Chapter 1, Part 4, to fund the PSC in 1986. At that **time, it** established methods for calculating the PSC fee which referred to and incorporated the formula used by DOR in calculating the MCC fee. The legislature chose not to provide an exemption from either of these fees for municipal utilities subject to limited regulation by the PSC. We conclude the City's municipal water utility **must** pay the MCC and PSC fees as determined by DOR using the method set forth in §§ 69-1-223(2) and -224, MCA.

We hold the District Court did not err in holding that the City of Billings, as owner and operator of a municipal utility, must always pay the PSC and MCC fees.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____
Justices

11